## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

LARRY P. NUNNERY

VERSUS

CITY OF BOSSIER

CIVIL ACTION NO. 09-cv-00848

JUDGE ELIZABETH ERNY FOOTE

MAGISTRATE JUDGE HORNSBY

### MEMORANDUM JUDGMENT

Plaintiff, Larry P. Nunnery [hereinafter "Nunnery"], was a police officer in the Bossier City Police Department before he was terminated due to a positive test for drug use.  Before the Court are Motions for Summary Judgment [Record Document 34] filed by the City of Bossier [hereinafter "City"] regarding Larry P. Nunnery's state and federal due process claims, and Nunnery's claims under Louisiana's Law Enforcement Officer's Bill of Rights.  LA REV. STAT. ANN. § 40:2531 (2001 & Supp. 2011).  Nunnery has also filed a Motion for Partial Summary Judgment on his Louisiana Law Enforcement Officer's Bill of Rights claim.  [Record Document 35].  For the reasons stated herein, the Court: (1) **GRANTS** Defendant's Motions for Summary Judgment [Record Document 34] and (2) **DENIES** Plaintiff's Motion for Partial Summary Judgment [Record Document 35].

## I.      Factual and Procedural Background

As an employee at Bossier City's Police Department, Nunnery was subject to

Bossier City's Alcohol/Drug Testing and Rehabilitation Policy and Procedures [hereinafter "Drug Policy"].  [Record Document 40-1, p.3].  The Drug Policy prohibits employees of the City from "[b]eing intoxicated or impaired by an unauthorized controlled substance, illegal drug or alcohol."  [Record Document 34-4, p.44].  It further provides that "[e]mployees, who violate this policy, test positive for alcohol and/or drugs, or refuse testing shall be subject to immediate termination and shall not be eligible for rehabilitation."  Id. at 53.  However, an employee who voluntarily seeks "evaluation, assessment, counseling, treatment, or rehabilitation through the EAP" before being tested or disciplined for drug abuse, may be "given the opportunity for evaluation, assessment, treatment, rehabilitation, and continued employment…." Id. at 53-54.

On May 12, 2008, Nunnery reported to his supervisory officer that he was abusing prescription pain medication.  Id. at 6.  Soon therafter, he entered inpatient treatment for his addiction.  Id. at 6-7.  He was released from inpatient treatment and ordered to enter outpatient treatment on May 15, 2008.  Id. at 7.  On May 20, 2008, before he began his outpatient treatment, Nunnery took more pain medication.  Id. Nunnery met with his supervisors and the director of Bossier City's Employee Assistance Program [hereinafter "EAP"], Will Jones, on May 23, 2008.  Id. at 8.  At the May 23rd meeting, Nunnery signed a document entitled "Last Chance Agreement".  Id. at 8-9.  In this agreement, he acknowledged that he had violated the Bossier City policy regarding substance abuse and that he was being "afforded the opportunity for treatment."

[Record Document 35-6].  The document also provided that his "future and continuous employment with the City of Bossier depend[ed] upon [him] remaining drug-free and not violating the City of Bossier City substance abuse policy."  Id.  Finally, the agreement included the following language, which was initialed by Nunnery:

> "I understand that if I test positive for any illegal drug within the next 24 months (starting in the Month May Day 23 Year 08) the City of Bossier City shall terminate my employment"

Id.

Nunnery claims that despite the clear language to the contrary in the Last Chance Agreement, at the May 23rd meeting he was assured that any drug use before May 23, 2008 would not subject him to termination.  [Record Document 40-1, p.9].  The City vigorously disputes this claim, pointing out that Nunnery' made a tape recording of the meeting.  The recording contains a discussion between Nunnery and Mr. Jones where the Last Chance Agreement is gone over point by point.  However, the recording contains no assures by Mr. Jones that Nunnery will not be subject to termination for drug use prior to May 23, 2008.  [Record Document 34-3].

On May 23, 2008, after Nunnery signed the Last Chance Agreement, Police Chief Halphen ordered that Nunnery be tested for drug use.  [Record Document 40-1, p.11].  Nunnery tested positive.  Id.  On May 30, 2008, Nunnery spoke to Dr. Ravindra Goel, the medical officer who reviewed the results of his failed test.  Id. at 12.  Dr. Goel reviewed the results of the drug test with Nunnery and asked him if there was any reason why he failed it.  Id.  Nunnery claims that as he was receiving many calls from

health care providers at that time he was not aware Dr. Goel's call concerned his failed

May 23, 2008 test.

On June 4th, 2008, Nunnery was summoned to report to Police Chief Halphen's

office at 9:00 a.m. the next morning.  Id. at 13.  The officer who contacted Nunnery

did not tell him the purpose of the meeting.  [Record Document 39, p.11].  The

following lines in Nunnery's deposition address whether he knew the purpose of this

meeting:

> Q: Did you have any idea about which [sic] it [the meeting] might be
> about?
> A: No idea.
> Q: You didn't think that it could perhaps have something to do with your
> drug use and your Last Chance Agreement?
> A: I figured it had something to do with that.

[Record Document 34-4, p.16].

At the meeting Police Chief Halphen asked Nunnery to explain why he should not be

terminated for testing positive for drugs.  [Record Document 40-1, pp.15-16]. The

parties dispute whether Nunnery offered an explanation. Id. Nunnery's employment

was then terminated effective June 5, 2008 and he was give written confirmation of his

termination and advised of his civil service appeal rights. Id.

Nunnery appealed his termination to the Bossier City Municipal fire and Police

Civil Service Board on June 6, 2008. [Record Document 34-3, p.11].  His appeal was

bifurcated and the Board rejected his Law Enforcement Officer's Bill of Rights claim on

August 6, 2008.  Id.  Nunnery appealed the ruling of the Board to the 26th Judicial

District Court in Bossier Parish on September 5, 2008.  Id.  He has not pursued his

State Court appeal or his remaining claim before the Bossier City Municipal Fire and Police Civil Service Board.  Id.  Nunnery commenced the present lawsuit on May 22, 2009.  Id.

## II.    Subject Matter Jurisdiction

The Court has original federal question subject matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim that he was denied the due process afforded to him by the United States Constitution.  28 U.S.C. § 1331 (2010).  However, as the rest of Nunnery's claims neither raise a federal question nor involve diverse parties, they are properly before the Court only under a theory of supplemental jurisdiction.  28 U.S.C. § 1367(a) (2010).  Given that both parties have undergone discovery and briefed the state law claims, the Court chooses to exercise its discretion under 28 U.S.C. § 1367(c) and retain jurisdiction over Nunnery's state claims for the purpose of ruling on these motions for summary judgment.

## III.   The City's Motion for Summary Judgment on Nunnery's Federal Due Process Claim [Record Document 34]

Summary Judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure if the movant shows that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When the moving party does not bear the ultimate burden of persuasion on the claim at issue, they may meet their burden of production by offering affirmative evidence in the form of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes

of the motion only), admissions, interrogatory answers, or other materials proving that the non-moving party cannot show a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(a).  If the moving party carries its burden of production under Rule 56, the burden shifts to the non-moving party to show that there is a genuine dispute as to material fact for trial, either by pointing to or rehabilitating evidence already in the record, or by offering new evidence.  Celotex v. Catrett, 477 U.S. 317, 332-33 (Brennen, J., dissenting).

A genuine dispute for trial exists when a rational trier of fact looking at the record could find for the nonmoving party.  Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Co., 475 U.S. 574, 586-87 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  Though the Court must view the evidence in the light most favorable to the non-moving party, the factual context of the claim is important in determining whether a rational trier of fact could find for the non-moving party.  Matsushita Elec. Industrical Co., 475 U.S. at 588.  A fact is only material if it "might affect the outcome of the suit under the governing law".  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  Thus, the fact must be relevant to legal dispute at issue in order to be considered material.  Id. ("Factual disputes that are irrelevant or unnecessary will not be counted.") If the non-moving party makes an evidentiary showing of a genuine issue of material fact, then the burden shifts again to the moving party to show the inadequacy of this evidence.  Celotex, 477 U.S. at 332.  However, if the non-moving party does not carry its burden, the court shall enter

summary judgment against them.  Fed. R. Civ. P. 56(a).

Nunnery seeks relief from the City's alleged due process violation under 42 U.S.C. § 1983 (2010).  Section 1983 provides a remedy for violations of federal law when the defendant is acting under "color of any statute, regulation, custom, or usage, of any State...." 42 U.S.C. § (2010).  The Supreme Court has held that a municipality may be sued under 1983 only for "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 690-691 (1978); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 3573.1 (3rd ed. 2011).  The City does not dispute that it is being sued for a policy statement or decision officially adopted and promulgated by its officers, and thus that the requirements of section 1983 are satisfied.

Procedural due process claims require a two-part analysis.  The Court must determine: 1) whether plaintiff has a liberty or property interest whose deprivation requires that he be afforded due process; and  2) if plaintiff does have such an interest, what process is due.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). Neither party disputes that as a "police officer under the civil service scheme" Nunnery had a property interest in his continued employment.  [Record Document 34-3, p. 13; Record Document 40, p.7].  Accordingly, the only question is whether Nunnery was

afforded all process that he was due.

At its core, due process requires notice of the charges brought against the plaintiff and an opporunity to be heard.  <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950).  However, due process is "flexible and calls for such procedural protections as the particular situation demands."  <u>Gilbert v. Homar</u>, 520 U.S. 924, 903 (1997) (citation omitted).  Following the principle that due process is a flexible concept, in <u>Cleveland Board of Education v. Loudermill</u> the Supreme Court held that a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," as opposed to a full pre-termination adversarial hearing.  470 U.S. 532, 546 (1985).  Pointing out that the plaintiff was entitled to a full post-termination administrative hearing, the <u>Loudermill</u> Court explained that a pre-termination hearing does not need to be elaborate:

> …the pre-termination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

<u>Id.</u> at 545-46.

The Court further explained that "an informal hearing which allows the employee to give his version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process...."  <u>Loudermill</u>, 470 U.S. at 546.

The Fifth Circuit applied <u>Loudermill</u>'s holding in <u>Browning v. City Odessa, Texas</u>.

990 F.2d 842, 844 (5th Cir. 1993).  In <u>Browning</u>, a firefighter who had been disciplined numerous times for insubordination, conduct unbecoming of a firefighter, and failure to follow orders - charges arising out of an ongoing conflict between the firefighter and a co-worker - was terminated after a 30 minute meeting with his superior officer. <u>Browning</u>, 990 F.2d at 843.  Plaintiff's termination was stayed after the City's personel manager insisted on a more formal pre-termination hearing.  <u>Id.</u> at 843.  The Fifth Circuit held that the first (informal) hearing between plaintiff and his supervisor satisfied due process even though it only lasted 30 minutes, because plaintiff was given notice of his possible termination, the reasons he was being terminated, an opportunity to respond, and he could avail himself of elaborate post-termination procedural safeguards.  <u>Id.</u> at 844-45.

With this controlling precedent in mind, the Court now turns to Nunnery's claims that he did not receive adequate notice or an opporunity to be heard before he was terminated.

**A.     Notice of the Charges Against Nunnery**

Due process requires that Nunnery had "notice of the charges against him."  <u>Id.</u> In <u>Browning</u>, the Fifth Circuit held that notice of the charges against Browning given to him at his pre-termination meeting, after he had been suspended four times without pay, satisfied the constitutional minimum required by Due Process.  990 F.2d at 843; <u>see also Brown v. Texas A&M University</u>, 804 F.2d 327 (5th Cir. 1986) (terminated employee's multiple meetings with supervisors over a period of two months in which

the focus was his proposed termination is adequate notice); but see Samuel v. Holmes,

138 F.3d 173 (5th Cir. 1998) (distinguishing Brown and holding an internal auditor of a

school district stated a violation of due process claim when he was notified that he was

to be terminated twenty minutes before he met with his supervisor, had not previously

discussed termination with his employer or been warned of possible termination by his

employer, and was not allowed to present his versions of the events).  Another District

Court in this District has read Browning to hold that notice of the charges against an

employee given to that employee only at the pre-termination hearing can satisfy the

minimum that due process requires.  Johnson v. City of Monroe, 2007 WL 1521436, at

*4 (W.D. La 2007).  In Johnson, however, the court denied the employer and

employee's motions for summary judgment on the issue of due process because it

found material questions of fact regarding whether the employer gave the employee

notice of dismissal during the meeting.  Id.

The Court reads this somewhat opaque case law as a function of the flexible

nature of due process analysis, which requires that the requirements of what process is

due be tailored to the individual facts of the case.  At the very least though, it is clear

that in this Circuit notice of the charges against the employee given at the pre-

termination hearing will suffice where there is a history of contact between the

employer and employee that warns the employee that he will be terminated for the

reasons given at the termination hearing.

Relying on Mathews v. Eldridge's holding that notice must be given to affected

persons at a meaningful time and in a meaningful manner, Nunnery argues that the City did not give Nunnery notice of the charges against him because he was summoned to the Chief's office without being told the purpose of the meeting, he was not given a written copy of his failed drug test, and though the record indicates a Doctor called to notify him of his failed drug test pursuant to City policy he does not remember that call and at the time he was receiving many calls from doctors regarding results of drug tests he had taken.  424 U.S. 319, 333 (1976); [Record Document 40, pp.12-16.]

At the outset, the Court notes that the record makes clear that Nunnery did understand the nature of the charges brought against him by the City before his pre-termination hearing.  In his deposition, Nunnery admitted that he knew the hearing concerned his violation of the drug policy:

> Q: Did you have any idea about which [sic] it [the meeting] might be about?
> A: No idea.
> Q: You didn't think that it could perhaps have something to do with your drug use and your Last Chance Agreement?
> A: I figured it had something to do with that.
>
> [Record Document 34-4, p. 16]

Nevertheless, Nunnery appears to dispute that Chief Halphen gave Nunnery notice of the charges against him at the June 5, 2008 meeting before he terminated him.

In Nunnery's Statement of Contested Material Facts, he asserts that "[t]he meeting did not provide Nunnery with pre-termination notice of the charges...." [Record Document 40-1, pp. 15-16].  However, this claim is merely conclusory, as it

does not challenge the underlying undisputed fact that Chief Halphen notified Nunnery at the meeting that he failed his May 23, 2008 drug test before he gave Nunnery an opportunity to respond.  [Record Document 40-1, pp. 15-16].  Nunnery's explanation of the next fact he contests contradicts his bare assertion that the meeting did not give him notice of his failed drug test.  In response to the City's claim that he did not give a satisfactory explanation for his failed drug test, Nunnery claims that he:

> tried to explain the drug test results to the Chief…stating, "I self-reported that I have an addiction.  This addiction is not going to be broke from May 12th through May the 15th.  If it was that simple, everybody would do it."

Id. at 16.

Accordingly, Nunnery raises no genuine issue of material fact concerning whether at the June 5th, 2008 meeting he was given notice of the charges against him before he was terminated.  Matsushita, 475 U.S. at 586-87.

If the only notice Nunnery received was the notice delivered during the June 5, 2008 meeting, this might be a closer case.  However, Nunnery had numerous meetings with his supervisors during the month leading up to the pre-termination meeting that focused on his violation of the City's drug policy and his possible termination.  This course of conduct between Nunnery and his supervisors, coupled with the more formal notice he received at the pre-termination meeting, clearly gave Nunnery enough notice of the charges against him to satisfy due process.

On May 23rd, Nunnery signed the Last Chance Agreement.  [Record Document 35-6].  That agreement, which the City's representative went over point by point with

Nunnery, included the following clause:

> "I understand that if I test positive for any illegal drug within the next 24 months (starting in the Month May Day 23 Year 08) the City of Bossier City shall terminate my employement"

> [Record Document 35-6].

This language conveyed to Nunnery that the City considered him in violation of its Drug Policy and that he would be terminated if he tested positive for drugs from May 23, 2008 until May 23, 2010.  If any doubt remained that the City was charging Nunnery with violating its drug policy, that doubt was dispelled by Nunnery's acknowledgment in the same agreement that he had "violated City of Bossier City policy regarding substance abuse…".  Id.  Indeed the entire May 23rd meeting gave Nunnery notice of the "charges against him" that could cause him to lose his employment.  Loudermill, 470 U.S. at 546.

Nunnery claims that during the May 23, 2008 meeting he was assured that he would not be disciplined for any drug use that occured before the date he signed the agreement, despite the fact that the clear language of the agreement - language that he initialed - contemplates that he would be terminated if he tested positive for drugs on May 23, 2008 regardless of when he took the drugs.  [Record Document 40-1, p.9]. The City vigorously disputes Nunnery's claim, pointing out that a secret recording of the meeting made by Nunnery shows that Will Jones went over the agreement point by point with Nunnery, but it does not include any assurance that Nunnery would not be disciplined for drug use that occured before May 23rd, 2008.  [Record Document 42,

p.8.].  The City claims that Nunnery's explanation that the recording device must have stopped working is entirely unbelievable.  Id.  However, in ruling on a motion for Summary Judgment, the Court cannot refuse to consider the non-moving party's evidence because it believes it is not credible.  Anderson, 477 U.S. at 255.

Nevertheless, even assuming that Nunnery was assured at the May 23, 2008 meeting that he would not be punished for any times he abused drugs, Nunnery has still not raised a genuine dispute of material fact regarding whether he was given notice that he would be terminated for violating the Bossier City Drug Policy.  Giving Nunnery the benefit of the doubt, in order to hold that the May 23, 2008 meeting did not give Nunnery notice of the charges against him, the Court would have to draw a fine distinction between two different "charges against him": 1) his violation of the Last Chance Agreement and; 2) his violation of the Bossier City Drug Policy.  In other words, Nunnery's argument that he had no notice of the fact that a failed drug test caused by drug use before May 23, 2008 could result in his termination depends on there being a distinction, for purposes of the Loudermill due process analysis, between his violation of the Bossier City Drug Policy, of which he must have had notice since he self-reported, and his alleged violation of the Last Chance Agreement.  The parties have not pointed the Court to any Fifth Circuit cases addressing the issue of whether a distinction must be drawn between notice of violation of the agreement and the earlier misconduct that led to the execution of the agreement in terminations involving last chance agreements, and the Court's own research has not uncovered any such cases.  However, courts in

other circuits have addressed related issues, and the Court finds their analysis of this issue helpful.

The case most clearly on point is <u>Lusher v. City of Mansfield</u>. 2007 WL 756655 (N.D. Ohio 2007).  There, a firefighter with an alcohol problem sued the City of Mansfield, claiming that the City of Mansfield had violated due process when they terminated him pursuant to a last chance agreement during a pre-termination meeting of which he was only given a few minutes advance notice.  <u>Id.</u> at *1-3.  Lusher had attended multiple meetings with his supervisors concerning his alcohol problem and rehabilitation.  <u>Id.</u>  His last chance agreement provided that the City of Mansfield would agree to hold his termination in abeyance unless he failed to comply with the specified treatment program.  <u>Id.</u> at *3.  The court found that given <u>Loudermill</u>'s reasoning that the availability of a post-termination hearing makes a more informal pre-termination hearing acceptable so long as it serves as an intial check against mistake, the requirement that the employee be given "notice of the charges against him" is not overly-stringent.  <u>Id.</u> at *7.  The employee is not entitled to the same type of notice that would be required in order to prepare for a full adversarial-type hearing.  The court found it dispositive that given Lusher's previous meetings with his supervisors concerning his alocholism, he was not "unfairly surprised by the subject matter discussed during his pre-termination hearing."  <u>Id.</u>

A few cases address this issue head on and draw a distinction between the two violations.  In <u>Lizzio v. Dept. of the Army</u>, the Federal Circuit Court of Appeals held that

due process required that the employee be given notice of how exactly they breached the last chance agreement, when the right of the employee to appeal their termination turned on whether the last chance agreement had been violated and the employee was terminated based on a different charge than the charge of which they had been given notice.  534 F.3d 1376, 1383 (Fed. Cir. 2008).  There, the court held that Lizzio's right to due process had been violated when a lower court ruled that Lizzio had violated his last chance agreement by engaging in "misconduct" despite the fact that Lizzio had only  been given notice of the charge that he violated the last chance agreement by "embarrassing the government".  Id. at 1384.  In so ruling, the court of appeals distinguished two cases, Girani v. Federal Aviation Admin., 924 F.2d 237 (Fed. Cir. 1991) and Baker v. Dept. of Transp., 418 F.3d 1369 (Fed. Cir. 2005), where notice of the original charge given when the employee executed the last chance agreement was deemed to satisfy due process when the employee was later dismissed for violating the last chance agreement based on the same type of conduct.  The Lizzio court held that these two cases stood for the proposition that "when an agency removes an employee from his or her position following breach of a last chance agreement, the breach is the trigger for the reinstatment of the original removal action, and consequenctly, a second formal notice of removal is not required."  Lizzio, 534 F.3d at 1386.  In Devenny v. Lakewood Fire Dist. 2, the Western District of Washington relied on the reasoning in Lizzio to hold that the notice a fireman received of the charges against him when he executed a last chance agreement satisfied due process when he was subsequently

terminated for violating that last chance agreement.  2011 U.S. Dist. LEXIS 18841 at

*19 (W.D. Wash. 2011).  In Devenny, the last chance agreement included a clause

where the employee waived his rights to appeal.  Id. at *7-8.

　　　　In Lizzio and Devenny, the courts held that the employee is given notice of the

charges against him as required by the due process clause when he executes the last

chance agreement.  The last chance agreement is construed as a contract between the

employee and employer providing that if the employee's conduct does not satisfy the

conditions in the agreement, the employee will be terminated.  Thus, subsequent

misconduct by the employee that breaches the last chance agreement in the same way

that the employee earlier violated the employer's policy does not require a second

"charge," and therefore more notice, by the employer.  The second violation of the

employee is merely evidence that the employer relies on to show that the employee

breached the agreement.

　　　　This Court declines to extend the reasoning of Lizzio to the instant facts.  In

Lizzio, the last chance agreement included a waiver of appeal rights and the legal

status of the last chance agreement was clearer than it is here.  534 F.3d at 1376.  The

plaintiff in Devenny also waived his rights to appeal any termination pursuant to his last

chance agreement.  2011 U.S. Dist. LEXIS 18841 at *7-8.  Since the plaintiffs in Lizzio

and Devenny did not have elaborate post-termination proceedings available to them,

Loudermill's holding that pre-termination process does not need to be as elaborate did

not apply.  Since post-termination review would have been unavailable to the employee

if the termination provisions of the last chance agreement were triggered, it made

sense for those courts to scrutinize the notice sent to the employee more carefully.  In

Lusher, the last chance agreement purported to waive his rights to appeal, but the

court held that he had not actually waived his right to appeal as he had in fact

appealed his termination through three mechanisms.  2007 WL 756655 at *2 n.5

("Although the LCA purported to include a waiver of Lusher's right to appeal the City's

termination, it is clear that it did not do so.").  As Nunnery was able to avail himself of

elaborate post-termination review, he is in a position closer to the plaintiff in Lusher.

Since he had post-termination review available, Loudermill dictates that the notice

requirements imposed on the City by the Fourteenth Amendment should not be as

stringent.  Furthermore, the legal status of the Last Chance Agreement at issue here is

hotly disputed by the parties, and does not admit to easy characterization as a

"termination held in abeyance".  [See e.g. Record Document 40, pp.9-11.]  Thus the

Court declines to draw a clear line between notice of violation of the City's drug policy

and notice of violation of the Last Chance Agreement.

     Given the lax pre-termination notice standard laid down by Loudermill and

Browning, the Court finds that the following facts indicate that Nunnery received

adequate notice of the charges against him: he discussed his violation of the City drug

policy and his obligation to not test positive for drugs from May 23, 2008 onward at the

May 23, 2008 meeting;  he admitted to knowing the purpose of the June 5, 2008

meeting before it occurred; and Chief Halphen gave him formal notice of the charges

against him at the June 5th, 2007 meeting before he was terminated.  Any oral assurances given to Nunnery that he would not be punished for prior drug use may have been relevant to the question of whether the city had cause to terminate him, but they do not show that Nunnery was not given notice of the charges against him for the purpose of Due process.  Nunnery has failed to raise a genuine dispute as to material fact concerning whether he was given adequate notice.[1]

## B.    The Opportunity to be Heard

Nunnery claims that he was denied an opporunity to be heard because the mayor authorized Chief Halphen to fire Nunnery before the pre-termination meeting took place on June 5, 2008 and because Nunnery was not provided with a copy of his failed drug test.  [Record Document 40, pp.12-15].

We begin with Nunnery's complaint that he did not receive a copy of this drug test.   Nunnery does not actually argue that the Fourteenth Amendment entitles him to a written copy of his failed drug test, but rather that the City's policy requires them to deliver a copy of the failed test to the employee "upon the employee's written request." [Record Document 40, p.15].  There is no evidence in the record that Nunnery requested a copy of the results of this test.  Even if Nunnery had properly requested the results, whether or not the City provided them is irrelevant in determining whether the City had complied with the minimum requirements of due process, since the

---

[1] As the Court finds that the undisputed facts listed above constitute adequate notice, Nunnery's dispute as to whether he understood the call from the Dr. Goel notifying him of his failed drug test is not material.  Anderson, 477 U.S. at 248; [Record Document 40-1, p.12].

Fourteenth Amendment only requires that the public employee be provided with "oral or written notice of the charges against him" and "an explanation of the employer's evidence".  Loudermill, 470 U.S. at 546.  State and municipal law does not determine what minimum of process is required by the Fourteenth Amendment.  Gerhart v. Hayes, 201 F.3d 646 (5th Cir. 2000).  Thus, the fact that Nunnery did not request, and was not provided with, a copy of his failed drug test is immaterial to the question of whether he was given an opportunity to respond to the charges raised against him.

Nunnery also argues that the decision to terminate Nunnery took place before the June 5, 2008 meeting, when Chief Halphen obtained written authorization from the mayor to terminate Nunnery's employment.  Nunnery's argument is that the decision to terminate Nunnery was made before Nunnery had a chance to respond to the charges against him.  [Record Document 40, pp.12-15].  While it is undisputed that Chief Halphen obtained the mayor's authorization to terminate Nunnery before he held the pre-termination meeting, Nunnery has failed to raise a genuine dispute as to whether Nunnery was terminated before he had an opportunity to respond.  In his statement of Contested Material Facts, Nunnery claims the following:

> Chief Halphen obtained the Mayor's authorization to dismiss Nunnery before he ever notified Nunnery of the test results... There was no communication between Halphen and the Mayor or any other evidence that the termination notice signed by the Mayor was only a proposed action... After the Mayor has approved the termination, there is no written policy or directive that would authorize the Police Chief to deviate from that decision... There was no written authorization or policy that would have permitted Halphen to impose any discipline less than dismissal after the Mayor had authorized dismissal...

[Record Document 40-1, p.13].

None of these claims, except perhaps the unsubstantiated claim that there is no evidence that the mayor's authorization was only a proposed action, are inconsistent with Police Cheif Halphen's statement during his deposition that Nunnery was not terminated before he had a chance to respond:

> Q: At the time you wrote the letter of termination was it your intent to terminate the employ of Officer Nunnery, if the mayor approved?
> A: If the mayor approved and then after I talked with Officer Nunnery. It's not, I want to reclarify myself, it's not set in stone, and because I want to talk to Officer Nunnery first.

[Record Document 42, p.7].

Accordingly, Nunnery's claim that there was no written policy allowing the Chief to continue to employ Nunnery after the mayor authorized his termination does not raise a genuine dispute as to whether Nunnery was terminated after he was given a chance to respond.[2]

## C.    Conclusion

As Nunnery has not raised a genuine dispute as to material fact regarding either the notice to which he was entitled or his opportunity to respond, Summary Judgment for the City with regard to Nunnery's Federal Due Process Claim is appropriate.  Since

---

[2] As further evidence that Nunnery's dispute is not genuine, the Court notes that in Nunnery's Motion for Partial Summary Judgment, he claims that it is undisputed that "[t]he authorization to terminate Nunnery's employment was not final.  Halphen held the authorization to terminate in abeyance until he could speak to Officer Nunnery and obtain an explanation of the test results."  [Record Document 35-2, p.4] Furthermore, Nunnery does not contest the City's claim that "his [Nunnery's] employment was terminated effective June 5, 2008.  [Record Document 40-1, p.15].

the Court finds that the City has not violated Nunnery's Due Process rights, we need not address the question of whether any due process violation prejudiced Nunnery. Accordingly, we hearby **GRANT** the City's Motion for Summary Judgment with regard to Nunnery's federal due process claim and **DISMISS** Nunnery's federal due process claim **WITH PREJUDICE**.

## IV.    The City's  Motion for Summary Judgment on Nunnery's Louisiana Due Process Clause Claims [Record Document 34]

As the Louisiana Due Process Clause parallels the Federal Due process Clause, we do not need to repeat our above due process analysis to dispose of Nunnery's state due process claim.  Giddens v. City of Shreveport, 901 F.Supp 1170, 1177 (W.D. La. 1995) (citing Delta Bank & Trust Co. v. Lassiter, 383 So.2d. 330 (La. 1980)); see also Progressive Sec. Ins. v. Foster, 711 So.2d 675, 688 (La. 1998).  Nunnery does not dispute that the minimum amount of due process required by the Louisiana Constitution is the same as the minimum amount required by the United States Constitution.  [Record Document 40, p.17] ("The difference between a due process claim brought under the Louisiana Constitution and a Fourteenth Amendment due process claim lies not in the minimum due process requirements, but in the remedies.").  The City's Motion for Summary Judgment with regard to Nunnery's Louisiana Due Process claim is hereby **GRANTED**, and Nunnery's Louisiana Due Process claim is **DISMISSED WITH PREJUDICE**.

**V.      Cross Motions for Summary Judgment on Louisiana Police Officer's Bill of Rights Claim [Record Documents 34 and 35]**

Nunnery claims that the manner in which he was terminated pursuant to his Last Chance Agreement violated title 40 section 2531 of the Louisiana Revised Statutes, a statute providing certain procedural protections for police officers who are under investigation for job-related misconduct.  La Rev. Stat. Ann. § 40:2531 (2001 & Supp. 2011).  Section 2531(A) provides:

> The provisions of this Chapter shall apply only to police employees... who are under investigation with a view to possible disciplinary action, demotion, or dismissal.

§ 2531(A).

Nunnery and the City agree that the effect of this language is that the protections afforded by this statute only apply if an officer is "under investigation".  [Record Document 35-1, p.11; Record Document 38, p.13].  Accordingly, as a threshold matter we must address whether Nunnery was placed under investigation when Chief Halphen ordered a drug test contemplated by the Last Chance Agreement on May 23, 2008.

Section 2531 does not define the term "investigation".  Nunnery relies on a Louisiana Attorney General's opinion arguing that "investigation", in the context of the statute, means a "close study or systematic inquiry for the purpose of gathering information to determine whether an employee has committed any act or omission for which disciplinary action might be imposed."  La. Attny Gen. Op. 08-0291. Nunnery reasons that since drug tests of employees have been held to be searches and seizures and are highly regulated by statute, they are not "casual questioning" or "informal

inquir[ies]" but rather they are "a collection and analysis of evidence, systematic

inquiry...." [Record Document 35-1, pp.14-15.]. Thus, under Nunnery's theory, every

time a random drug test is ordered, as contemplated by the Last Chance Agreement,

an investigation under section 2531 is initiated and all of the protections of the statute

apply.

      The City argues that the statute read as a whole clearly excludes random drug

testing pursuant to a last chance agreement from its ambit. The statute is directed

primarily towards formal "internal affairs" investigations that take place after a

complaint has been made against an officer by his supervisor or a citizen. [Record

Document 38, p.15]. It lays out a time limit after a formal complaint is made against

an officer by which time an investigation has to be initiated. § 2531(B)(7). The bulk of

its procedural protections apply explicitly only to "interrogations" of police officers. §§

2531(B)(1),(2),(3) and (5). Only subsection B(5), which provides that statements

made by the officer under investigation shall not be admissible in a criminal proceeding,

applies outside the context of an interrogation. Furthermore, virtually all of the rights

afforded police officers by this statute - the right to representation by counsel in

subsection (B)(4)(A); the right of counsel to make statements on the record in

subsection B(4)(c); the right to reasonable periods for rest and personal necessities in

subsection B(2); the right to have interrogations recorded in full in subsection B(3); the

right to be informed, at the commencement of the interrogation, of the nature of the

investigation and the identity and authority of the people conducting the investigation

in subsection B(1); the right to take notes in subsection B(1) - make sense in the context of a formal or informal internal investigation involving questioning of the officer, but make no sense in the context of a random drug test agreed to by the officer as a condition of their continued employment.

The City also argues that since Nunnery voluntarily admitted to violating the City's drug policy, there was nothing for the City to investigate.  [Record Document 34-3, p.25].  The statute does not mandate that an officer be investigated before he is disciplined.  § 2531.  If Nunnery had not admitted to violating the City's policy, an investigation might have been necessary, but as he voluntarily admitted to drug use, his random drug testing for two years was a part of his discipline, not a series of subsequent investigations.

The only Louisiana case found by this court directly addressing the meaning of "investigation" is Bergeron v. City of Kenner, a case interpreting the parallel Firefighters' Bill of Rights.  51 So.3d 143 (La.App. 5 Cir. 2010); LA REV. STAT. ANN. § 33:2181 et seq. (2001 & Supp. 2011).  The Louisiana State Court of Appeals for the Fifth Circuit held that a meeting between a firefighter and his supervisor, where they argued about how to interpret a policy that the firefighter was alleged to have violated, was not an investigation under the Firefighters' Bill of Rights.  Bergeron, 51 So.3d at 147.  The court found the Attorney General's "close study or systematic inquiry" test helpful.  In explaining its decision, the court noted that:

> The underlying actions by Bergeron that precipitated the meeting were undisputed.  There were no facts to investigate and no evidence was

presented to show a "systematic inquiry" or "close study".  Although the nature of the meeting was debatable...

Id.

The facts of the instant case are not analogous to the facts of Bergeron.  Here, the question is whether routine attempts to monitor an officer's compliance with his agreement after he has already been found to violate City policy constitute investigations.  In Bergeron the question was whether a discussion between an employee and his supervisor concerning the interpretation of a policy the employee was accused of violating constituted an investigation.

The Court is persuaded that as a matter of law, random drug testing in accordance with a last chance agreement are not "investigations" under title 40 section 2531.  The random drug testing to which Nunnery agreed to submit as a condition of retaining his job is more appropriately characterized as an effort to "monitor" his continued compliance with the agreement, rather than as series of discrete "investigations".  The Court finds that reading the statute as a whole is more helpful in determining the meaning of the word "investigation" than the Louisiana Attorney General's overly broad "systematic inquiry" test.  As the Bergeron court recognized, the Opinions of the Attorney General of Louisiana are merely persuasive authority, they are not binding precedent in Louisiana.  Bergeron, 51 So.3d at 147.  In this case, the language of the statute contemplates a narrower scope of application than the opinion of the Louisiana Attorney General interpreting it, and the language of the statute must govern.

Since we find as a matter law that the word "investigation" in title 40 section 2531 does not encompass random drug testing pursuant to a last chance agreement, the City is entitled to Summary Judgment on Nunnary's Police Officer Bill of Rights Claim.  Accordingly, the City's Motion for Summary Judgment [Record Document 34] is hereby **GRANTED**, and Nunnery's title 40 section 2531 claim is **DISMISSED WITH PREJUDICE**.  For the same reasons, Nunnery's Motion for Partial Summary Judgment is **DENIED**.

## VI.   Conclusion

Accordingly,

**IT IS ORDERED** that: (1) Defendant's Motions for Summary Judgment [Record Document 34] be and are hereby **GRANTED, DISMISSING WITH PREJUDICE** all of Plaintiff's claims; (2) Plaintiff's Motion for Partial Summary Judgment [Record Document 35] be and is hereby **DENIED**.    September 26, 2011 in Shreveport, Louisiana.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE